## WEIGHT OF EVIDENCE IN PROCEEDING IN BASTARDY.

Circuit Court of Cuyahoga County.

PETER RICHARD V. STATE OF OHIO, EX REL·

Decided, November 23, 1909.

*Bastardy—Period of Gestation—Weight of Evidence—Exhibiting Child to Jury.*

1. It is not conclusive that one charged with being the father of a bastard child is not guilty, that the period of gestation was only 259 days.
2. Where the bastard child, two years old, was exhibited to the jury to show its resemblance to its putative father, a reviewing court will be loth to reverse a judgment against him on the weight of the evidence.

*Berkley Pearce,* for plaintiff.
*Davis & Manak,* contra.

WINCH, J.; HENRY, J., and MARVIN, J., concur.

This is a bastardy case which we are required to review upon the sole question of the weight of the evidence.

It is claimed that the relator's story is improbable in two respects, as to the manner in which the bastard was begotten and the date thereof.

The conclusion of twelve men as to the former we are not able to confute, and as to the latter, only 259 days elapsing between the conception and birth, we can not say that it is too short a period to be possible. The usual period of gestation is forty weeks. Such is the law of England according to Lord Coke (Coke on Litt., Vol. 1, p. 123). It is common knowledge however, that old housewives count the forty weeks as beginning at the last menstrual period before conception. The evidence of Dr. Burke on this subject, as found in the record, would not preclude the jury from believing the relator's story as to the date on which the act of intercourse occurred. We do not

think her story improbable in this respect and her entire evidence seems to be that of a truthful witness.

The defendant denies that he ever had intercourse with the girl and proves an alibi for the date she gives for the occurrence.

But is his denial to be believed?

It seems that the day he was arrested, he met the relator and invited her to his office that evening where they talked matters over. I will read some of the evidence as to what occurred there, and his comments thereon. On page 81 of the bill of exceptions is the following:

"A.   On the day that she brought the proceedings against me, I took her to my office and got her version of the affair, and got her to make an accusation.

"Q.   She had already made an accusation before that hadn't she?   A. Well I got her to repeat the accusation, and to make some statement."

And on page 84:

"When I asked her other questions, as I was ready to leave, I told her I couldn't recollect of having any intercourse with her on January 6th."

And on page 85:

"A.   Well I said, when she said 'January 6th,' I knew instantly that she was not telling the truth."

And on page 87:

"A.   I said to her:   'Well I can't recollect having seen you on January 6th; I must think this thing over.   If, on thinking it over, I find I recollect anything about that case to convince me that I am responsible for your condition, I will make proper sort of a settlement.   That is, I will either marry you or I will provide for your child, if I convince myself that your story is right.'   I was convinced immediately on the moment that it was not true, her story."

And on page 92:

"A.   Well the first remark I made was 'Well,' I says, 'when did this take place, when I got you into this fix?'   She said, it was the first Sunday in January.   I took a little desk calendar and turned to it and found that that was January 6, I said, 'is

this the date?' and pointed to it, and she said, 'Yes' that must be the date, January 6th.' I said, 'Well, I don't remember this, I don't remember when this happened but,' I says, 'I will think this over and if I can find, if I can recollect of having been with you then, I don't recollect having been with you then, if I can however I will consider that I really did this, and I will make the proper sort of a settlement.''

With evidence like this from his lips the jury might well have believed that he protested too much when he said he had never had intercourse with the girl.

There is another reason why we are loth to disturb this verdict. The baby itself, then about two years old, was exhibited to the jury for it to determine any real or fancied resemblance it might have to its putative father, a practice approved by the Supreme Court in the case of *Crow* v. *Jordan,* 49 Ohio St., 655. What weight this exhibit had with the jury we do not know, but a reviewing court has no such exhibit to examine and therefore has an added reluctance to reverse a verdict on the weight of the evidence.

Judgment affirmed.